OPAL V. PEARSON, ADMINISTRATRIX, APPELLANT, v. GEORGE E. RANDALL ET AL., RESPONDENT.—91 S. W. (2d) 116.

Kansas City Court of Appeals. February 17, 1936.

*Finigan & Joyce* and *John M. Langsdale* for appellant.

*Hook & Thomas* and *Philip J. Close* for respondent.

SHAIN, P. J.—This action arose under the Workmen's Cempensation Act.

It appears that in June, 1930, William A. Spiva, while engaged as a plasterer as an employee of George E. Randall, and while working on a scaffold, stepped on a board which broke and caused him to fall approximately six feet to a concrete floor.

It is shown that on June 22, 1930, Spiva was taken to a hospital and there he was daily attended by Dr. John Luke until August 31, 1930, when he died.

After the death of Spiva, his daughter, Opal V. Pearson, alleging herself as a dependent, made application to the Workmen's Compensation Commission for compensation.

The parties were notified, and on January 6, 1931, a hearing was had before Jay J. James, a member of the commission.

At this hearing the employer and the insurance company were represented by counsel and participated in the hearing.

. No jurisdictional questions were raised. That Spiva was an employee was not disputed, and no question as to Spiva having had a fall, by reason of a plank in the scaffold breaking, was raised.

In making application for compensation, Opal V. Pearson designated the time of the accident as around June 16 or 17, 1930.

The great weight of the evidence at this hearing was that the accident occurred on June 18, 1930.

At this hearing no serious question as to the time of the accident was raised. It appears that all parties in the conduct of the proceeding, including examination of witnesses, acted upon the theory that the accident occurred approximately at the time stated and the testimony of Charles A. Spiva, a son of deceased, who was the foreman on the job, and of workmen who were on the job fully substantiated as to the time.

It appears that the serious contest at this hearing was centered upon the question as to whether or not the applicant was a dependent upon her father.

Dr. Luke, the attending physician, testified that Mr. Spiva died from traumatic arthritis, that in his opinion was caused by fall and injury.

There was no evidence offered by the employer or insurance company to contradict the facts as set forth above.

On February 2, 1931, Commissioner James made an award on hearing had January 6, 1931; the Commissioner in this award found that Opal V. Pearson was a dependent; that the accident occurred June 18, 1931; that the parties come within the provisions of the act; that deceased received his injuries in due course of employment and that he died from result of injury received June 18, 1930.

The Commissioner's award allowed the applicant $20 per week for 300 weeks, totaling $6000.

It appears that on February 11, 1931, that the employer and the insurance company made an application for review by the full commission. This application made upon the printed form used had typewritten on its face the following sentence to-wit:

"The employer and insurer desire to introduce newly discovered evidence and request the Commission to set the case for the taking of further testimony on review."

It appears from the record before us that there was a hearing had before Commissioner James on Wednesday, April 1, 1931.

At this hearing, Mrs. Opal Pearson was called and examined by council for employer and insurance company; her testimony was principally directed to the question of dependence.

Nine other witnesses were called and examined by the employer and insurance company and at this hearing all questions tried and determined in the hearing of January 6, 1931, were opened up and gone into. This was done over the protest of claimant. In this hear-

ing there was much evidence that the accident occurred on June 2, 1930.

Much of the evidence given on this hearing was based upon the memory of fellow workmen.

In the evidence in the regular hearing on January 6th, it was developed that the deceased, while having accident on the 18th, stayed on the job and returned on the 19th and only stayed two hours and left and that he was not thereafter on job.

In the hearing on April 1, 1931, witnesses testified from their recollection, that the accident happened in the early part of June and testified that they had seen Mr. Spiva on the job after the accident for a number of days. The effect of such testimony is manifest in view of the fact that in the hearing on January 6th the evidence was to the effect that after two hours on June 19th, Spiva was not thereafter on the job.

At the hearing before Commissioner James on April 1, 1931, a Mr. Heflin was called and testified. Heflin was superintendent of the job upon which Spiva was employed. He testified that he kept the time on the job as same was given him by the various foremen. He testified that he was around the job daily. His knowledge as to what occurred he admitted would be from the time book and accident report.

Mr. Heflin, in the course of his examination, was handed what was designated as the time book. From reference to this time book, which does not appear in the record, the witness testified to the fact that the deceased worked after June 2nd; that he worked only two hours on the 19th, but not thereafter.

What purported to be the accident report was shown the witness; however, the report is not shown in the record. The testimony discloses that the accident report was made on June 25th, three days after Spiva went to the hospital. From the testimony it appears that time of accident was indicated on this report as 6-2.

It appears that the witness made some notations on this accident report and signed same with blanks that were afterwards filled out by another employee.

In the course of the examination of this witness the following questions and answers appear:

"Q. Have any kind of record outside of that one day he lost to make you think the accident happened that day? A. No, I have no other record outside of this book and that piece of paper.

"Q. And in order to determine when accident happened you had to go back over time book and see where he missed a day and then you put that down as day of accident? A. That's correct."

As to the hearing held before Commissioner James on April 1, 1931, suffice it to say, that there was ample evidence offered from which it could be concluded that the accident occurred on June 2,

1930, and ample evidence from which it can be concluded that Spiva died from other causes than the injury, if any, occasioned by the accident. The evidence as to the accident being on June 2nd was given by the employee, his superintendent and others working on the job. The evidence contradicting the theory of death as a result of the accident was given by experts based upon hypothetical questions fixing the time of the accident as of June 2, 1930.

It appears that the only award made by Commissioner James was the award of February 2, 1931. This award could not of course be based upon any evidence in a hearing before him on April 1, 1931. No attempt is shown upon the part of Commissioner James to set aside his findings of fact and law and award made on February 2, 1931.

The hearing of April 1, 1931, in an enterloping hearing before the one Commissioner had after the losing parties had exercised their right for a review before the full commission.

This action, we presume, was based upon some theory of newly discovered evidence as expressed in the typewritten sentence in application for review.

There appears in the record what purports to be a final award on hearing on review:

April 1, 1931, the transcript of the final award and hearing on review bears date of May 11, 1931, and is signed by all of the members of the commission and attested by the secretary.

In this final award the compensation is denied the dependent; the commission is shown as making findings in favor of employer and denying compensation.

We quote from this award of May 11, 1931, as follows:

On page 39 of the record Dr. Luke testifies as follows:

"Q. And in your opinion this condition is caused by an injury? A. Yes, sir.

"Q. How long after an accident, doctor, could that condition first show itself? A Very soon in this type of condition, from forty-eight hours to four or five days, maybe seven days."

Page 45 of the record:

"Q. And you base your conclusion that the condition was due to injury on the history given of an injury? A. Yes, sir.

"Q. And what was that history? A. From the patient?

"Q. Yes. A. He complained of a fall from a scaffold the date he gave me was June 18th, patient was plastering at Independence on a school house when he fell off the scaffold and lit on his right arm and shoulder and knee, that was history patient gave me on the 22nd of June."

Dr. Edward M. Hoskinger, on behalf of the claimant, testifies as follows on page 51 of the record:

"Q. Is it usual for arthritis that is acute or traumatic arthritis to develop as quickly as in this case? A. They develop approximately—say in two or five days, I would say."

Page 52:

"Q. Your testimony is based purely on the record at the hospital? A. Yes.

"Q. And what does that include? A. History, physical examination, laboratory reports, nurses record and the autopsy report.

Q. And condition wouldn't have to develop suddenly, might be some time? A. Well, as much as a week.

"Q. Considering the fact that the attending physician's records you examined found pussy condition in the mouth, might not that condition have caused—or localized itself in the right knee and set up a condition from which he died? A. Yes.

"Q. Well doctor, will this condition develop—how long according to the record? A. About four days.

"Q. And is that the usual time? A. Yes that's customary.

"Q. Assuming that this man was hurt in June—say 2nd of June, would it develop in that time? A. That's about twenty days until he got in the hospital—that's rather long—no I wouldn't say so, say have to show up sooner than that.

"Therefore, from the foregoing evidence given on behalf of the claimant, we are forced to conclude that the arthritis and infection developed too late to have resulted from the accident of June 2, 1930, and that employee's death was from causes independent of his employment."

As to the last question and answer, we find nothing in the evidence at the hearing of January 6, 1931, that justifies the assumption of June 2nd. There was discussion with witnesses concerning whether date might have been 16th or 17th, but nothing upon which to base June 2nd.

From the final award of May 11, 1931, petitioning defendant appealed to the Circuit Court of Jackson County and on hearing in the circuit court the award of June 11, 1931, was sustained and from the judgment of the circuit court sustaining same the petitioning defendant has appealed.

OPINION.

He who coined the phrase "There's nothing new under the sun," evidently had not opportunity to read the Workmen's Compensation Act of Missouri and those who advocated the enactment as a panacea for the evils at which it was directed, and indulged in the thought that its passage would relieve the congestion in our courts and thwart the law's delay, have not as yet realized the fruition of their hopes.

In exemplification of above, the accident in issue occurred in June, 1930, over five and one-half years ago. The first award made by

Commissioner James was made February 2, 1931, over five years ago and only reached this court for review at the present term of this court.

The Workmen's Compensation Act is a code within itself. The act is intended to give enforcement of substantial rights at sacrifice of procedural rights. We cannot conclude however that direction for summary and informal procedure disposes of and nullifies all wholesome rules of procedure that are so necessary to human rights, nor that the substantive law of the land is abrogated, except, as so done by the express and direct language of the act itself.

Section 3339 provides for hearing in a summary proceeding by one member of the commission wherein the commissioner, after hearing the parties and testimony, determines the dispute. At all hearings before the Commissioner the evidence is taken down by a competent stenographer.

The commissioner is empowered to make an award together with a statement of his findings of facts, rulings as to law, etc. This award and finding is sent to the parties.

If the award made by one commissioner is acceptable to all parties, the same becomes final. If however any party is not satisfied, there is a period of ten days in which to make application for review is had under provisions of section 3341 of the act which reads as follows:

"If an application for review is made to the commission within ten days from the date of the award, the full commission, if the first hearing was not held before the full commission, shall review the evidence, or if deemed advisable, as soon as practicable hear the parties at issue, their representatives and witnesses and shall make an award and file same in like manner as specified in the foregoing section. [Laws 1925, p. 375, sec. 43.]"

The award in this case for which an application for a review was made, was the award of Commissioner James of February 2, 1931.

There is nothing in the record before us to show that it was deemed advisable by the full commission to hear the parties at issue, their representatives and witnesses. It is apparent that no such hearing was ever had before the full commission. It is apparent that such review as was had before the whole commission must have been based upon a review of the transcribed evidence as taken before the one commissioner acting under the provisions of section 3339 of the act.

The only possible review of the findings and award made by commissioner James on February 2, 1931, must of necessity be made as based upon the issues then presented and upon the evidence before the commissioner at the hearing of January 6, 1931.

Whether or not the provisions of section 3341 of the act is broad enough to permit the full commission to reopen the whole case and permit a hearing *de novo,* supported by new witnesses, is not now before us to decide. It is evident that no such course was followed.

We do conclude however, that in a review of hearing; findings and award made by one commissioner on February 2, 1931, that the full commission upon a review of same cannot take into consideration evidence taken before this one commission on April 1, 1931, which later evidence could not have entered into the findings and awards that the application asks to be reviewed.

There seems to be no provision in the Workmen's Compensation Act for a commissioner to reopen the case for further hearing after the parties and the evidence and after determining the dispute between the parties and after making an award in full compliance with section 3339 of the act and after the losing party has fully complied with requirement for review before the full commission. If however, such were admissible it could only be effectually done by a setting aside of the former award and the making of a new award based upon all of the evidence.

The hearing of April 1st is clearly shown as being occasioned by the declaration as to newly discovered testimony.

It has been held by this court that an applicant to whom compensation has been denied by one commissioner, under the provisions of section 3339, who after asking for a review appears before the one commissioner and submits additional testimony, waives the right to have the full commission to hear witnesses. [Wing v. Metropolitan Life Insurance Company, 39 S. W. (2d) 418.]

The record in the case at bar shows that the successful claimant made objection to all testimony offered by the employer and insurance company on April 1, 1931, that went to the issue of the time and result of the accident.

The objection made is as follows:

"By Mr. SENNER: If your honor please, I would like to object to testimony of this man; this hearing was held January 6th and the defendants had opportunity to introduce all this evidence and didn't introduce it and according to my understanding of the law, the case is closed so far as that part is concerned and they filed application for review and to gone down before the entire commission, and now they come in and want to reopen the entire case.

"By Mr. JAMES: I think it is within the discretion of the commission and the other two commissioners seem to want some additional testimony, I overrule it, go ahead."

It appears that such rights as the claimant herein has touching the reception of evidence on April 1, 1931, as to the time and result of the accident, was not waived by her.

If it be concluded that a commissioner acting under the provisions of section 3339 of the Workmen's Compensation Act has a right to open the case for new evidence after he has made and entered an award, it still follows that the fundamental rules touching reception of evidence in the reopening of a case should have some consideration.

The commissioner in the present case is not shown to have acted upon his own motion. The matter was reopened and the hearing of April 1, 1931, had on the application of the losing party after award had been made.

That the hearing before a commissioner is informal and that he hears the parties in a summary proceeding does not absolve one who is asking to reopen the case for further testimony from making some showing upon which he bases his application. The applicant should show some excuse for not introducing the evidence before the hearing and award, and should reveal wherein the evidence would influence a change in the award as made.

The first two witnesses introduced at the hearing on April 1, 1931, are heard on the issue of dependence of the claimant. This was a matter gone into minutely on the first hearing and nothing new was presented to influence a change in the finding of the commissioner on that issue.

Under the excuse of newly discovered testimony, the superintendent on the job was called. This witness was the timekeeper on the job and the duty devolved upon him to report accident. We have quoted from this witness above. His evidence as to material matters is principally based upon a book and accident report which he had, which book and report do not appear as introduced in evidence. The report is shown to have been made out June 25, 1931, and the witness states that, with exception of date 6-2 and some other notations, was signed and handed to another who later filled same out.

At the rehearing the employer and workmen who were on the job were called and testified.

An examination of the testimony of these witnesses shows conclusively that their testimony was as available to the employer on January 6, 1931, as on April 1, 1931. The evidence is in no sense shown to be newly discovered. In the hearing of January 6, 1931, it is shown that the employer and insurance company made reference to the accident report, but neither offered the same or offered testimony concerning same, that was as available on January 6th as on May 11th.

At the April hearing medical experts were called and testified.

In the hearing of January 6, 1931, the date of accident as of approximately June 18, 1930, as before stated, was not materially disputed. The case was tried upon that theory.

The theory presented on April hearing is centered on date of accident as June 2, 1930, and it is attempted to be substantiated by newly discovered testimony. We conclude that the testimony being available on January 6, 1931, is not available to disturb the award of January 6, 1931, and further conclude that expert testimony based upon this testimony is not available for that purpose.

We conclude that the findings of fact and of law and the award made by Commissioner James on February 2, 1931, are well founded upon the hearing had before him on January 6, 1931. We find that the application for review is specifically directed to the hearing of January 6, 1931, and award thereon February 2, 1931. We conclude that the evidence taken April 1, 1931, is not competent evidence that can be considered by the full commission on review. We base our conclusion on two grounds, first, the evidence of April 1, 1931, could not have entered into the findings, conclusions and award of February 2, 1931. Second, the evidence was given and received on theory of newly discovered testimony and we find that the showing justified the conclusion that the testimony was as available on January 6, 1931, as on April 1, 1931, and therefore not even competent on reopening after award was made.

Based upon findings and conclusions above set forth, we find that the award made by the whole commission on May 11, 1931, is not based upon any substantial evidence. We further conclude that the trial court was in error in sustaining the commissioner's award of May 11, 1931, for the reason there is no competent evidence supporting the award.

The judgment of the circuit court is reversed and cause is remanded with instructions to enter a judgment for the appellant in accordance with the award made by Commissioner James on February 2, 1931. Bland, J., concurs.